Robert CONNELLY, Mark Gummer, Fernand Payeur, William Willey, Daniel Weber, Bernard Foster, and Allan Eisenkraft

v.

**DUN & BRADSTREET, INC.**

Civ. A. No. 79–2334–Z.

United States District Court, D. Massachusetts.

Jan. 29, 1982.

Gael Mahony, Hill & Barlow, Boston, Mass., for plaintiff.

Gerald F. Rath, Herrick & Smith, Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

In this class action suit brought by a number of customers of one of the defendant's former clients, defendant Dun & Bradstreet has filed a motion to compel the production of certain documents. Included among those documents are two sets of questionnaires sent by plaintiff's counsel to prospective class members. Plaintiffs oppose this motion on the grounds that the questionnaires are protected under the attorney-client privilege and represent attorney work-product. Because both the attorney-client privilege and work-product doctrine protect the responses to the questionnaires, the motion to compel is denied with respect to them. On the other hand, the motion to compel production of the documents identified in Paragraphs 3 and 4 of defendant's Second Request for Production of Documents is granted.

Plaintiffs are former customers of Lloyd, Carr & Company ("Lloyd, Carr"), a bankrupt corporation which was in the business of soliciting and selling commodity options on futures contracts. On November 8, 1978 during the course of the bankruptcy proceeding, the court appointed an attorney to act as Customers' Representative to protect the interests of Lloyd, Carr's former customers. In addition to his other actions on behalf of the customers, on January 12, 1979 the attorney sent the customers a letter and questionnaire seeking information and documentation as to their interests.* He followed this up by filing creditors'

---

* The letter stated:

Recently I was appointed by the Federal District Court in Massachusetts as attorney to represent the interests of all persons who had purchased commodity options from Lloyd, Carr & Company.... My responsibility, as the Court-appointed Customers' Representative, is to ensure that the rights to (money recovered by the Receiver) of customers who may have been defrauded by Lloyd, Carr & Company are fully protected.... In order for me to make an informed decision about the types of claims that can be asserted on behalf of persons who purchased options

claims in Lloyd, Carr's bankruptcy proceeding on behalf of all customers whom he represented.

The instant class action complaint against Dun & Bradstreet was filed on November 21, 1979 on behalf of the same group of customers. This complaint alleges that Dun & Bradstreet knowingly assisted Lloyd, Carr in its scheme to defraud by supplying Lloyd, Carr with certain information about plaintiffs' resources without plaintiffs' knowledge or authorization.

On April 7, 1980 the attorney sent a second letter and questionnaire to the customers. The letter advised the customers of the recent developments in the bankruptcy proceeding and stated that the attorney had brought a class action complaint on the customers' behalf against Dun & Bradstreet. The second questionnaire solicited information from each of the customers about contacts with Dun & Bradstreet. These two questionnaires are the subject of defendant's motion to compel.

### Attorney-Client Privilege

■ Where an attorney-client relationship exists, the client may prevent disclosure of communications between the parties. This privilege is designed to encourage full and frank communication between attorneys and their clients, recognizing that sound legal advice depends on the client's ability to engage in open discussions with the attorney, *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The rule allowing the privilege represents a public policy determination that the confidentiality of such communications is in the interest of ensuring the administration of justice. *Id.,* citing *Hunt v. Blackburn,* 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888).

■ The privilege applies if 1) the person asserting it was or sought to be a client, 2)

the person to whom the communication was made was a lawyer and in connection with the communication acted as a lawyer, 3) the communication relates to a fact communicated for the purpose of securing assistance in some legal proceeding and 4) the privilege has not been waived. *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–9 (D.Mass.1950).

■ The last three of the requisites for the privilege clearly have been established in connection with the first questionnaire. It is undisputed that the Customers' Representative was a lawyer. He was appointed by the Court to protect the interests of defrauded customers and to assert their claims against the receiver. He solicited information from the customers he was charged with protecting by means of the questionnaire. He needed that information to determine the extent of the interest of each and to file appropriate claims on behalf of each. Under these circumstances the conclusion is inescapable that the customers responded in anticipation of securing the legal assistance of the Customers' Representative.

More difficult of determination is the status of the customers. Although their relationship with the Customers' Representative was not the traditional one of attorney and client, I rule that for purposes of the privilege they are properly to be regarded as clients.

In *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 294 F.Supp. 1148 (E.D.Penn.1969) the court noted that each individual member of an unincorporated association was a client of the association's attorney, although in the setting of that case the documents sought did not relate to legal representation and were discoverable. *See also, United States v. American Radiator & Standard Sanitary Corp.,* 278 F.Supp. 608, 614 (W.D.

from Lloyd, Carr & Company, I need information from you. Accompanying this letter is a questionnaire which I urge you to fill out and return to me as soon as possible. At the end of the questionnaire, you will note that I have requested you to send me all documents

and papers that you received at any time from Lloyd, Carr & Company. (Please retain copies for your files). By returning the completed questionnaire and the documents, you will help me be a more effective advocate for your interests.

Penn.1967); *Schwartz v. Broadcast Music, Inc.,* 16 F.R.D. 31, 32 (S.D.N.Y.1954).

Similarly, in *Westinghouse Electric Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311, 1319 (7th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978), the court found an attorney-client relationship between the attorney and individual members of the American Petroleum Institute who had returned questionnaires to the attorney representing the Institute. That questionnaire stated that the attorney was acting as a special counsel for the Institute, and that the attorney soliciting the information was acting in a legal capacity. After noting that "[t]he client is no longer simply a person who walks into a law office", *id.* at 1318, the court referred to a number of untraditional situations in which the attorney-client privilege had been found in the absence of any formal or express attorney-client relationship. Because "[t]he professional relationship for purpose of the privilege for attorney-client communications 'hinges upon the client's belief that he is consulting a lawyer in that capacity...'" (footnotes containing citations omitted) *id.* at 1319, the court stated that "[a] fiduciary relationship may result because of the nature of the work performed and the circumstances under which confidential information is divulged." *Id.* at 1320.

In the instant case, the language of the cover letter indicated to the recipient that the Customers' Representative was acting as an attorney representing the customer's legal interests. Although some of the information requested in the questionnaire might not be viewed as confidential, the questionnaire also asked for information as to net worth, income, and investment activities. Such information is not normally divulged in the absence of an understanding that it will be held in confidence, and used for the benefit of the informant in safeguarding his legal interests. These facts permit the inference that the customers reasonably regarded the Customers' Representative as their lawyer in the bankruptcy proceedings. Because an attorney-client relationship existed between those customers and the Customers' Representative at the time the former returned the questionnaires, they are entitled to the protection afforded to their communication by the attorney-client privilege. Therefore, the motion to compel the production of the answers to the first set of questionnaires is denied.

## Work Product

Fed.R.Civ.P. Rule 26, provides that parties may obtain discovery regarding any matter, not privileged, which relates to the subject matter involved in the pending action. Rule 26(b)(3) however, states that discovery may not be had of documents and tangible things otherwise discoverable which have been prepared in anticipation of litigation, without a showing of substantial need for such materials and an inability to obtain the equivalent by other means without undue hardship. These documents and tangible things which have been prepared in anticipation of litigation, considered "work product", are granted a qualified exemption from the liberal rules regarding discovery. The policy behind 'work product' protection, as articulated by the Court in *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947) and confirmed recently in *Upjohn v. United States, supra,* 101 S.Ct. at 686–87, lies in the necessity for lawyers to work with a degree of privacy in order to further the interests of clients and, ultimately, the cause of justice.

In determining whether a particular document is subject to work product protection, a court must first determine whether it was prepared in anticipation of litigation. Questionnaires sent to individuals for the purpose of assisting an attorney in giving legal advice in the context of imminent litigation are "work product". *In Re Grand Jury Investigation,* 599 F.2d 1224, 1229 (3rd Cir.1979); *In Re Grand Jury Subpoena,* 599 F.2d 504, 512 (2nd Cir.1979). *See also United States v. Deere & Co.,* 9 F.R.D. 523, 528 (D.Minn.1949) (questionnaires are one of the steps by which a counsel prepares for trial and are "as much the work of a lawyer as the preparation of proposed ques-

tions to be used in examining a witness at the actual trial").

 Even if a document satisfies the work-product criteria, however, it may still be discoverable upon a showing of sufficient need for the document to overcome the qualified protection. A party must show that the substantial equivalent cannot be obtained through other means. Where a witness is unavailable or where contemporaneous statements have been made that cannot be reproduced, courts will often order the production of work product. *See* 8 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2025 (1970 and Supp.) and cases cited therein. On the other hand, mere inconvenience or expense is not such need as will defeat the "work product" protection. *See, e.g., United States v. Chatham City Corp.,* 72 F.R.D. 640, 644 (S.D.Ga. 1976).

In the instant case, the answers to the second set of questionnaires, mailed to the customers on April 7, 1980, are protected work-product. On the date of mailing, the class action complaint against Dun & Bradstreet had been filed and litigation had commenced. The purpose of the questionnaire was to gain information necessary to further the lawsuit. Therefore, plaintiffs need not produce the second set of questionnaires, Dun & Bradstreet having failed to demonstrate substantial need.

It is not enough for defendant to assert that the information is critically important to the issue of class certification, relevant, and not available by practicable means. Substantial information dealing with class action certification has already been tendered to the defendant. A party may not use the liberal rules of discovery to engage in inquiry about the way the other side intends to conduct its case. *Upjohn, supra,* 101 S.Ct. at 686.

Accordingly, the motion to compel production of the two sets of questionnaires is denied. With respect to the documents requested in Paragraphs 3 and 4 of defendant's Second Request for Production of Documents, the motion is granted. Defend-

ant is entitled to look at documents identified in or reviewed by plaintiffs in preparing their responses to interrogatories, to the extent that such documents are not otherwise protected. Defendant is also entitled to require that plaintiffs supplement their earlier production of documents with material they have subsequently accumulated. The parties shall develop a reasonable schedule for the production of these materials. If they are unable to do so, they may request assistance from the court.