### AMCA INTERNATIONAL CORPORATION,

v.

### Harvey F. PHIPARD, Jr.

### Civ. A. No. 83–3398–N.

United States District Court,
D. Massachusetts.

July 23, 1985.

Robert G. Flanders, Jr., Jeffrey C. Schreck, Edwards & Angell, Providence, R.I., for plaintiff.

Robert S. Frank, Jr., Jonathan Chiel, Choate, Hall & Stewart, Boston, Mass., for defendant.

## ORDER ON DEFENDANT'S SECOND MOTION TO COMPEL PRODUCTION OF DOCUMENTS (# 62)

ROBERT B. COLLINGS, United States Magistrate.

The defendant is an inventor. In 1960, he and the plaintiff's predecessor entered into an agreement whereby the defendant assigned certain patent rights to the plaintiff's predecessor; plaintiff's predecessor, in turn, agreed to grant licenses on defendant's patents to third persons and to pay a portion of the royalties to the defendant. Further agreements were signed in 1962 and 1968 which supplemented the original 1960 agreement.

In 1983, the plaintiff determined that the formula which it had used to calculate the royalty payments to the defendant was in error and that the error caused the defendant to be paid substantially more, according to the plaintiff, than was his due. Accordingly, in August, 1983, the plaintiff began to calculate the defendant's royalties pursuant to a new formula, which plaintiff contended was the proper formula to use under the terms of the agreements which had been signed in the 1960's. When the royalties were reduced, the defendant sought to terminate the agreements, and the plaintiff filed suit seeking injunctive and declaratory relief.

On August 31, 1983, the plaintiff, through Arthur Bancroft, President of the AMCA subsidiary which administered the licensing of the defendant's patents, wrote the defendant a letter in which he officially informed the defendant of the use of the new formula. As an enclosure, Mr. Bancroft sent a memorandum addressed to him from the plaintiff's corporate counsel dated August 3, 1983. The memorandum is just over five pages long and states counsel's position as to the proper interpretation of the agreements between the plaintiff and defendant and as to the proper formula which should govern calculation of royalties by the plaintiff to the defendant.

On the basis of the disclosure of this memorandum, the defendant seeks, by Defendant's Second Motion To Compel Production Of Documents (# 62), the following documents which are responsive to the defendant's requests but which counsel for the plaintiff has claimed are privileged:

1. Memoranda between AMCA corporate officers and AMCA attorneys, between January, 1983 and August, 1983, concerning license agreements and payment of royalties to Phipard.

2. Correspondence between AMCA and outside counsel, from November, 1982 to date, concerning the 1960 and 1968 agreements.

Defendant's argument is simply that the disclosure of the memorandum to the defendant operated as a waiver of the attorney-client privilege not only as to that document but to all documents relating to the same subject matter. *Smith v. Alyeska Pipeline Service Co.*, 538 F.Supp. 977, 982 (D.Del., 1982).

Plaintiff argues that while the disclosure of the memorandum clearly operated as a waiver of the full contents of that particular memorandum, it did not operate as a waiver of all other documents relating to the same subject. *American Optical Corporation v. Medtronic, Inc.*, 56 F.R.D. 426, 431–2 (D.Mass., 1972).

A review of the cases indicates that the extent of a waiver which results from a disclosure turns on the particular circumstances in which the disclosure was made and the purpose for the disclosure.

In the case of *In Re Grand Jury Subpoena Dated July 13, 1979*, 478 F.Supp. 368 (E.D.Wis., 1979), the Grand Jury sought documents in the possession of a corporation's law firm which were prepared in connection with the law firm's investigation into "questionable payments" by its clients. In connection with this investigation, the law firm interviewed numerous corporate employees and issued a report, which was disseminated not only to an in-

ternal audit committee but also to the Securities and Exchange Commission, the Internal Revenue Service, and a state grand jury. The issue in the case was whether the corporation could assert the attorney-client privilege as to the lawyer's notes of interviews with employees, and if so, whether the privilege had been waived by the dissemination of the report.

The Court held that the privilege could be asserted and that the release of the report did not operate as a waiver of the interview notes on the ground that a holding to the contrary would substantially curtail any voluntary cooperation between corporations on the one hand and governmental agencies and grand juries on the other, cooperation which is in the public interest and "should be encouraged". *Id.* at 372–73. In support of its conclusion, the Court cited *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8 Cir., 1977) which had held that a corporation's voluntary surrendering of a report by its law firm to the Securities and Exchange Commission pursuant to an agency subpoena was only a "limited" waiver of the privilege and refused to require disclosure of the report and the reports of the interviews of the employees to the defendant.

However, the matter is one which requires careful balancing. In the case entitled *In Re Sealed Case,* 676 F.2d 793 (D.C. Cir., 1982), the Court of Appeals for the District of Columbia, while agreeing that voluntary disclosure should be encouraged, declined to find only a limited waiver in a case where a corporation contended that it had made full disclosure to the SEC yet, at the same time, refused to disclose, on the ground of privilege, "... crucial documents that reveal a different, highly embarrassing version of events." *Id.* at 822.

There are other instances where courts find only a limited, rather than a general waiver, on the basis that the limited disclosure is in the public interest and should be encouraged and that such disclosure would be curtailed if a general waiver was found. In *American Optical Corporation v. Medtronic, Inc., supra,* American Optical claimed that certain pacemakers manufactured by Medtronic infringed its patents. Medtronic commissioned an attorney to study the patents; during his study, he generated a number of documents on the issue, some of which were disclosed to his client, others of which were not.. Although a license agreement was reached, the attorney continued his study of the validity of the patents. Medtronic maintained that it always viewed the patents as invalid but subscribed to the licensing agreement because litigation at that point would jeopardize its attempt to gain public financing.

American Optical sought to compel all of the documents generated by the attorney during his study of the patents and the licensing negotiations on the basis of the partial disclosure of his opinions and conclusions during the license negotiations. The Court declined to find a waiver, holding:

> ... I reject the notion that a party waives its privilege if a lawyer, bargaining on its behalf, contends vigorously and even in some detail that the law favors his client's position on a point in issue—whether that point is the contested validity of a patent, the contested validity of a contract, or some other matter. Bargaining, like litigation itself, partakes of the adversary procedure. Negotiated settlements are to be encouraged, and bargaining and argument precede such settlements. Clients and lawyers should not have to fear that positions on legal issues taken during negotiations waive the attorney-client privilege so that the private opinions and reports drafted by an attorney become discoverable. *See I.B.M. v. Sperry Rand Corp.,* 44 F.R.D. 10, 13, and especially n. 2 (D.Del., 1968).

*American Optical Corporation v. Medtronic, supra,* 56 F.R.D. at 431–32.

A similar holding, i.e. disclosure during settlement negotiations, is only a waiver limited to what is actually disclosed during those negotiations, is found in *Burlington Industries v. Exxon Corporation,* 65 F.R.D. 26, 45–46 (D.Md., 1974).

In the *American Optical* case, American Optical advanced a second argument to the effect that a waiver resulted from the fact that the attorney and Medtronic's in-house counsel had both filed affidavits to the effect that "... Medtronic took a license not because of its belief that the patent was valid but because of Medtronic's desire not to jeopardize its attempts to gain public financing." *American Optical Corporation v. Medtronic, supra*, at 432. As to this argument, the Court wrote that:

> Such statements, indeed, come perilously close to waiver. Serious questions of fairness arise especially when a party makes statements under oath to secure a benefit while denying his opponent, under a claim of privilege, the opportunity to contradict those statements.

*Id.*

However, the Court declined to find a waiver, at least at the pre-trial stage of the proceedings. The Court wrote:

> Had Medtronic partially disclosed the contents of a specific communication, it might well have waived its privilege as to that communication. If, during the course of the trial, Medtronic seeks to prove its assertion that at the time the license was taken it believed the patent invalid and not infringed, and, especially if it relies on testimony of Stone [the attorney] and/or its officers as to what was communicated among themselves, then fairness might require a ruling that the privilege was waived as respects all of those communications.

*Id.*

The decision in *American Optical* was followed in almost exact detail in *Sylgab Steel & Wire Corporation v. Imoco-Gateway Corporation*, 62 F.R.D. 454 (N.D.Ill., 1974).

However, in other cases, courts have declined to find a limited waiver and have found that disclosure of some confidential material acts as a waiver of all material, whether disclosed or not, on the same subject matter. What type of waiver will be applied usually depends on the purpose for which the disclosure was made. The issue

has been described as one of "basic fairness" and courts have often followed the statement of the issue found in Wigmore:

> (4) The client's offer of his own or the attorney's testimony as to a *specific communication* to the attorney is a waiver as to all other communications to the attorney on the same matter. This is so because the privilege of secret consultation is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it to the former.

8 Wigmore on Evidence, § 2327 (1961 McNaughton rev.)

Thus, when disclosure is made of otherwise privileged information which is directly relevant in aiding the trier of fact to resolve a contested issue of fact at trial, courts have applied a subject matter waiver. For example, in the case of *Haymes v. Smith*, 73 F.R.D. 572, 577 (W.D.N.Y., 1976), a civil rights case, the defendant pleaded an affirmative defense to the effect that any acts taken by him were performed in the reasonable belief that he was not violating any of the plaintiff's constitutional rights. The defendant released a letter he wrote to counsel seeking legal guidance as to the acts he was then planning which were later alleged to be in violation of plaintiff's constitutional rights. A waiver of all communications reflecting legal advice given to the defendant was found.

In *Weil v. Investment/Indicators Research and Management, Inc.*, 647 F.2d 18, 23–25 (9 Cir., 1981), the plaintiff alleged that a mutual fund's failure to register its shares pursuant to the Blue Sky Laws of the states in which it sold shares was a material fact which should have been disclosed in prospectuses. The plaintiff's claims required proof of scienter. The defendant fund disclosed communications containing the legal advice which the fund received from counsel relative to its obligation to register under the Blue Sky Laws. The Court found that such disclosures operated as a waiver of all communi-

cations relative to the subject matter of the communications actually disclosed. *Id.* at 25.

To the same effect is *Lee National Corporation v. Deramus*, 313 F.Supp. 224, 227 (D.Del., 1970).

Other courts have found a subject matter waiver even if the advice given by the attorney is not directly relevant to an issue in the case. In *Haymes v. Smith, supra,* the court appears to hold that it would have found a subject matter waiver even if the advice which the defendant received at the time was not directly relevant to the defendant's good faith.

In the case of *International Business Machines Corp. v. Sperry Rand Corp.,* 44 F.R.D. 10 (D.Del., 1968), the Court ruled that the disclosures pursuant to authorizations given to attorneys for Sperry Rand to release certain privileged information for negotiation purposes respecting defects in a computer operated to waive the attorney-client privilege as to all communications between attorney and client dealing with that subject matter, i.e. the defects in the computer. The Court cited Wigmore to the effect that the "rule of partial disclosure" is one "dictated by considerations of fairness" and described its holding as follows:

> This narrow reading of the scope of the waiver will, in the Court's opinion, foster the free disclosure which the privilege is designed to encourage while protecting against misuse of the privilege to distort or mislead.

*Id.* at 13.

In the case of *Smith v. Alyeska Pipeline Service Co., supra,* the defendant moved for production of all documents recording or relating to communications between the plaintiff and his former attorney dealing with whether the defendant infringed a patent allegedly owned by the plaintiff. The Court held that although the communications were privileged, the plaintiff waived the privilege "... by deliberately injecting into the case the advice which he received from his attorney." *Id.* at 979. The waiver occurred when the plaintiff, through his attorney, voluntarily sent to the defendant a copy of an opinion letter written by plaintiff's attorney advising that the defendant was infringing the plaintiff's patent. The Court ordered production of all communications between the plaintiff and his attorney both before and after the date of the disclosed communication which related to the alleged infringement by the defendant of plaintiff's patent.

As indicated, the court in the *Smith* case characterized the plaintiff's action as "... deliberately injecting into the case the advice which he received from his attorney" and cited the portion of Wigmore's treatise, cited *supra,* for the proposition that a party which does so waives the privilege as to all communications on the same subject matter. However, in his treatise, Wigmore is clearly speaking of the situation in which testimony relative to the attorney's advice is introduced at trial and is, in and of itself, a relevant factor in the case. *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 929 (N.D.Cal., 1976). In the *Smith* case, the court does explain how the attorney's advice to the plaintiff that the defendant was infringing his patent is probative with respect to any factual issue in the case, unless the attorney is to be an expert witness on the question of infringement.

In my view, the distinction is an important one. It is the distinction with which the court in the case of *American Optical Corporation v. Medtronic, supra,* 56 F.R.D. 426, was concerned and why, despite the fact that an affidavit had been filed by Medtronic's counsel as to why the corporation took a license on American Optical's patent even though it viewed the patent invalid, the court declined to find a waiver "for the present", it not yet appearing that Medtronic would, at trial, use the partial disclosure of privileged communications as a means of attack, i.e. a means "... to prove its assertion that at the time the license was taken it believed the patent invalid and not infringed ...". *Id.* at 432.

Turning to the instant case, Mr. Bancroft's ostensible purpose in disclosing plaintiff's corporate counsel's memoran-

dum to the defendant was to explain the plaintiff's position and hopefully to generate acceptance of that position by the defendant. In this sense, the memorandum was disclosed in the course of "settlement" negotiations, but they were attempts to negotiate a settlement based on plaintiff's unilateral demand that the defendant agree to allow the plaintiff to abandon the formula which it had been using for some years and to adopt another formula which was more favorable to plaintiff. To be sure, there is a sense in which the plaintiff was using the memorandum as a "sword" rather than as a "shield". But the plaintiff was and is not now using the privilege as a "sword" in the sense that the plaintiff, in its disclosure, was not waiving the privilege as to favorable evidentiary material for use at trial while refusing to disclose unfavorable evidentiary material. The fact that the plaintiff was seeking to change the formula for paying royalties is undisputed; in these circumstances, I fail to see how counsel's memorandum has any evidentiary significance other than the fact that it was written and was employed as part of the notice to the defendant of the changes which plaintiff was making. So far as appears, there is no issue of intent or motive for the change; the issue is which party's interpretation of the agreements is correct.

Put another way, while the memorandum was disclosed to attempt to persuade the defendant to adopt plaintiff's interpretation of the agreements, I do not see the situation as one where there is a waiver of some documents which a client considers helpful and a refusal to disclose other documents on the same subject which the client considers damaging. It is undisputed that the plaintiff had used one formula to pay royalties to the defendant for a long period of time which the defendant found acceptable and that, in 1983, the plaintiff changed its mind as to whether or not that formula was the correct one. What is damaging to the plaintiff is the fact that it operated under a particular formula for many years before deciding that it was in error. Thus, in the instant case, it is hard to see how the

plaintiff has made a selective disclosure of only documents which are favorable and hidden more damaging documents. It may well be that, in such a situation, fairness dictates that the privilege be maintained as to other documents on the same subject. *First Wisconsin Mortgage Trust v. First Wisconsin Corporation,* 86 F.R.D. 160, 174 (E.D.Wis., 1980).

In these circumstances, I decline to follow the broad holding of the *Smith* case and will not rule that the disclosure in this case was a waiver of all prior and subsequent communications between the plaintiff and its counsel on the interpretation of the contracts in issue. In my view, a more careful balancing, such as the court employed in *American Optical Corporation v. Medtronic, Inc., supra,* is necessary.

I do believe that the release of the memorandum itself is a waiver of the attorney-client privilege as to a partial group of documents which relate to the same subject matter. In fairness, the plaintiff, by the release of the memorandum of August 3rd, should be held to have waived the privilege as to all communications between the plaintiff and both its in-house counsel and outside counsel which were generated from the time when the plaintiff first explored the possibility of altering the formula for paying royalties up to the date of the disclosure of the memorandum on August 31, 1983 and which concern the subject matter of the memorandum. In all the circumstances of this case, I believe that finding a waiver only to this extent promotes the basic fairness which should characterize rulings on issues of privilege. Thus, the defendant is able to obtain the documents which relate to the writing of the memorandum. This, in my view, is all that the defendant needs to counteract any "offensive" use which the plaintiff made of the privileged communication. On the other hand, the plaintiff is able to retain the privilege as to other communications between it and its attorneys.

Accordingly, it is ORDERED that the Defendant's Second Motion To Compel Production Of Documents (# 62) be, and the

same hereby is, ALLOWED to the extent that the plaintiff is ORDERED, pursuant to Rule 37(a)(2), F.R.Civ.P., to produce, *on or before the close of business on Friday, August 16, 1985,* all documents evidencing communications between the plaintiff and its attorneys generated from the date on which the plaintiff first considered changing the formula for payments of royalties to the defendant to August 31, 1983 which relate in any way to the subject matter of in-house counsel's memorandum of August 3, 1985. It is FURTHER ORDERED that the Defendant's Second Motion To Compel Production Of Documents (# 62) be, and the same hereby is, otherwise, DENIED.