Lawrence J. SAX,

v.

John W. SAX.

Civ. A. No. 90–12190–K.

United States District Court, D. Massachusetts.

March 15, 1991.

Adam J. Ruttenberg, Bingham, Dana & Gould, Boston, Mass., for plaintiff.

Bernard A. Dwork, Barron & Stadfeld, Boston, Mass., for defendant.

## ORDER ON MOTION TO DETERMINE SUFFICIENCY OF PRIVILEGE CLAIM (# 16)

ROBERT B. COLLINGS, United States Magistrate Judge.

After hearing, it is ORDERED that the Motion To Determine Privilege Claim (# 16) be, and the same hereby is, ALLOWED. I rule that the defendant John Sax, who brings counterclaims against the plaintiff, has waived the right to invoke the attorney-client privilege with respect to discussions he had with his attorney regarding the subject matter of the Memorandum Agreement between himself and Lawrence J. Sax which is the subject of both the complaint and counterclaim.

The facts are that the Memorandum Agreement was negotiated between the parties at length, and during those negotiations both parties were represented by counsel. Plaintiff seeks a declaration that the Memorandum Agreement is valid; the defendant/plaintiff-in-counterclaim claims that "... the Memorandum was executed as a result of fraud, misrepresentation, and coercion ..." by Lawrence Sax and, further, "... that there was no meeting of the minds between the parties because the Memorandum was vague and the parties did not have a mutual understanding." Memorandum of John W. Sax, Etc., (# 19) at p. 2.

Jurisdiction is based on diversity of citizenship. While there does not appear to be a Massachusetts state case directly on point, I am confident that the Supreme Judicial Court would follow the rule laid down in other jurisdictions in such a situation. That rule is stated succinctly by the Fifth Circuit in the case of *Conkling v. Turner*, 883 F.2d 431 (5 Cir.1989). The issue in *Conkling* was whether the plaintiff knew, at a certain point in time, that a particular statement by the defendant was false. The statute of limitations on Conkling's claims had run unless there was a tolling because Conkling did not know Turner's statements were false. Because Conkling raised the tolling issue, defendants claimed that they were "... entitled to depose Conkling's attorneys to learn when Conkling actually knew or should have known that Turner's statement was false." *Id.* at 434. The Fifth Circuit wrote:

> The attorney-client privilege "was intended as a shield, not a sword." *Pitney–Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446 (S.D.Fla.1980). "[W]hen confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege." *United States v. Mierzwicki*, 500 F.Supp. 1331, 1335 (D.Md.1980). The great weight of authority holds that the attorney-client privilege is waived when a litigant "place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege against disclosure of such information would be manifestly unfair to the

opposing party." *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975).

*Id.* (additional citations omitted).

The matter was generally discussed by the First Circuit in *Greater Newburyport Clamshell Alliance v. PSCNH*, 838 F.2d 13 (1 Cir.1988). The civil suit brought by the alliance asserted claims under 42 U.S.C. § 1983, and the Court appears to have applied federal law. The Court noted that:

> ... two general approaches to the resolution of the issue of whether a party implicitly waives privileged information by litigating his claims in a civil case." Courts have either found an automatic waiver of the privilege by raising the civil claim (the "automatic waiver rule") or have applied some form of balancing test to determine whether the privilege is waived under the facts of the particular case.

*Id.* at 17.

Finding the situation in the *Clamshell Alliance* case to be "quasi-constitutional" since the conversations took place at a time when the attorney was prepared a defense to a criminal case, the Court rejected the "automatic waiver rule" and applied the balancing test. *Id.* at 20.

Whether the Supreme Judicial Court would adopt the "automatic waiver rule" or a balancing test does not change the result in this case. John Sax has raised an issue of his lack of understanding of the Memorandum Agreement in circumstances in which perhaps the only person who would have explained the agreement to him was his attorney. His assertion of the counterclaims in this case was an implicit waiver of the privilege as to the subject matter of the agreement and the circumstances leading to its execution. *See also Johnston Development Group, Inc. v. Carpenters Local 1578*, 130 F.R.D. 348, 354 (D.N.J.1990).