**COLONIAL GAS COMPANY, Plaintiff,**

v.

**The AETNA CASUALTY & SURETY COMPANY, Defendant.**

**Civ. A. No. 89–1106–WD.**

United States District Court,
D. Massachusetts.

Sept. 24, 1991.

---

Scott P. Lewis, Palmer & Dodge, Boston, Mass., for plaintiff.

James L. Ackerman, Day, Berry & Howard, Boston, Mass., for defendant.

ORDER RE: AETNA CASUALTY & SURETY COMPANY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY (DOCKET ENTRY # 56)

MARIANNE B. BOWLER, United States Magistrate Judge.

Defendant Aetna Casualty & Surety Co. ("defendant") filed a motion to compel with accompanying affidavit and memorandum seeking to compel production of 550 allegedly privileged documents as well as the testimony of deponent Scott Lewis, plaintiff's counsel of record. (Docket Entries ## 56–58). Plaintiff Colonial Gas Co. ("plaintiff")[1] filed an opposition with accompanying affidavit asserting attorney client privilege and work product doctrine as grounds to withhold production. (Docket Entries ## 60 & 61). This court, in an effort to narrow the scope of the inquiry, conducted a hearing and directed the parties to confer and submit a report on or before July 26, 1991. By letter dated July 26, 1991 and signed by both parties, Aetna withdrew requests for documents numbered 40, 45, 46, 54, 80, 87, 267, 272, 282, 293, 307, 310, 312, 325, 327, 425, 427, 437, 448, 493, 495–500, 537, and 546. The re-maining requests for documents and testimony are pending before this court.

## BACKGROUND

Plaintiff[2] filed this breach of contract action against defendant, its general liability insurance carrier, because defendant denied coverage for a $600,000 dollar payment that plaintiff made to the Massachusetts Department of Public Health ("DPH"). Plaintiff made the payment in the context of Massachusetts' statutory program to compensate owners of urea-formaldehyde foam insulated homes. Mass.Gen.L. ch. 111, § 5 (St.1985, c. 728; hereinafter: the "UFFI Act").

From 1977 to 1979, plaintiff, through an independent contractor, insulated approximately 400 Massachusetts homes with urea-formaldehyde foam insulation ("UFFI"). (Docket Entry # 1, ¶¶ 10 & 12). In 1979, the Massachusetts Commissioner of Public Health ("Commissioner") banned the sale and distribution of UFFI. Mass. Regs.Code tit. 105, §§ 650.000 et seq. In 1980, the Commissioner created a procedure requiring dealers, installers, distributors, and manufacturers of UFFI to repurchase the UFFI if homeowners claimed to suffer adverse health effects. Mass.Regs. Code tit. 105, § 650.222 (the "UFFI repurchase regulations")[3]. Effective July 1, 1986, the UFFI Act authorized the DPH to create a "UFFI Trust Fund" to finance the testing and removal of UFFI from residential dwellings. In November 1985, in anticipation of the UFFI Act, the DPH contacted plaintiff and requested a voluntary contribution of $950,000 dollars. (Docket Entry # 1, ¶ 21). Shortly thereafter, plaintiff contacted defendant about coverage under the general liability insurance contract. Defendant subsequently disclaimed coverage. (Docket Entry # 1,

---

1. On July 30, 1981, plaintiff Colonial Gas Company merged with Cape Cod Gas Company, assuming all the rights and liabilities of Cape Cod Gas Company. (Docket Entry # 1, ¶ 2). Accordingly, reference to "plaintiff" prior to July 30, 1981 in this Order may refer to Cape Cod Gas Company.

2. Plaintiff is a public utility organized under Mass.Gen.L. ch. 164. Defendant, a Connecticut insurance company, contracted with plaintiff to provide general liability insurance.

3. The UFFI repurchase regulations were later extended to apply to all UFFI homeowners, regardless of adverse health effects.

¶¶ 26 & 28). A number of homeowners commenced litigation against plaintiff under the UFFI repurchase regulations [4]. On December 14, 1987, after negotiating with the DPH, plaintiff paid $600,000 dollars into the UFFI Trust Fund. (Docket Entry # 1, ¶¶ 23 & 31; Docket Entry # 61, ¶ 13). Plaintiff's payment relieved plaintiff of liability under the UFFI repurchase regulations with the exception of bodily injury not reasonably discoverable by the homeowner. (Docket Entry # 1, ¶ 24). The subject matter of the asserted attorney-client privilege and the work product doctrine include communications between plaintiff's counsel, Mr. Lewis, Molly H. Sherden, Esq. of Palmer & Dodge and the DPH regarding the $600,000 dollar payment. (Docket Entry # 61, ex. B).

In this action, plaintiff alleges breach of the comprehensive general liability insurance contract, unfair and deceptive trade practices under Mass.Gen.L. ch. § 93A and unfair and deceptive settlement practices under Mass.Gen.L. ch. § 176D. On April 25, 1991, defendant deposed Mr. Lewis [5], plaintiff's designated representative under Fed.R.Civ.P. 30(b)(6), in connection with DPH negotiations. At the deposition, Mr. Lewis refused to answer the following five questions on the grounds of attorney client privilege:

(i). Did you ever instruct Colonial to refer any requests that were made by telephone directly to Palmer & Dodge?

(ii). What did you inform Colonial with respect to this UFFI Trust Fund?

(iii). Did you inform Colonial of the subject matter of your conversation with Ms. Fox?

(iv). What was the substance of that conversation (between Colonial and Mr. Lewis)?

(v). As to communications and information that would pass between yourself and Colonial or among Colonial's members or employees as to when in the course of all the events we've talked about today (did) Colonial began (sic) to contemplate that it might be involved in coverage litigation with The Aetna, specifically with respect to the repurchase regulations and now also with respect, to the extent we've discussed them sort of separately to start with and separately with respect to any contribution that Colonial might, might (sic) make to the UFFI Trust Fund?

(Docket Entry # 61).

From November 1990 to January 1991, plaintiff supplied defendant with approximately 20,000 documents and refused to supply approximately 550 others on the grounds of the attorney-client privilege and the work product doctrine. The documents supplied include written communications between plaintiff and the DPH. (Docket Entry # 61, ¶¶ 3–4). On December 14, 1990, defendant served plaintiff with a second set of interrogatories, asking plaintiff to identify the documents withheld on the grounds of privilege. On January 29, 1991, plaintiff produced a log of the 550 withheld documents. (Docket Entry # 61, ¶¶ 6 & 7). On June 17, 1991, defendant filed the motion to compel presently before this court.

## DISCUSSION

### I. *Attorney Client Privilege*

Rule 501, Fed.R.Evid., provides that privileges are governed by state common law in civil diversity cases. *See Wylie v. The*

---

**4.** Litigation included a class action, *Fletcher, et al. v. Cape Cod Gas Co., et al.*, 394 Mass. 595, 477 N.E.2d 116 (1985). Defendant allegedly agreed to pay legal fees and costs incurred in the class action while simultaneously reserving its right to disclaim coverage. (Docket Entry # 1, ¶ 33).

**5.** From a reading of the materials in connection with this motion, it is apparent that Mr. Lewis, plaintiff's counsel of record, may have to testify at trial. As stated *supra* in the conclusion,

plaintiff is therefore ORDERED to file a brief on or before October 31, 1991, as to the likelihood of his testimony and, if likely, any conflict that may arise under DR 5–102, S.J.C. Rule 3:07, Canon 5, and the corresponding disciplinary regulation and ethical considerations in the American Bar Association's Code of Professional Responsibility. *See Commonwealth v. Goldman*, 395 Mass. 495, 480 N.E.2d 1023, n. 9, *cert. denied*, 474 U.S. 906, 106 S.Ct. 236, 88 L.Ed.2d 237 (1985).

*Marley Co.*, 891 F.2d 1463 (10th Cir.1989). Plaintiff is a Massachusetts corporation and this action centers around plaintiff's liability for the installation of UFFI in approximately 400 Massachusetts homes. Accordingly, this court will apply Massachusetts law [6].

■ The attorney-client privilege protects communications made between client and attorney for the purpose of obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *Matter of John Doe Grand Jury Investigation*, 408 Mass. 480, 562 N.E.2d 69, 70 (1990) (attorney-client privilege survives client's death). Although the privilege promotes unfettered communications between the attorney and the client, *Id.* 562 N.E.2d at 70, the privilege runs contrary to full disclosure of relevant information and is, therefore, narrowly construed. *Commonwealth v. O'Brien*, 377 Mass. 772, 388 N.E.2d 658, 661 (1979) (privilege may extend to preliminary communications looking to representation even if representation is not undertaken).

■ The privilege may be waived *by the client. Matter of John Doe Grand Jury Investigation*, 562 N.E.2d at 70 (emphasis added). The extent of a waiver that results from a disclosure depends upon the circumstances in which the disclosure was made and the purpose for the disclosure. *AMCA International Corporation v. Phipard*, 107 F.R.D. 39, 40 (D.Mass.1985).

■ Defendant argues that plaintiff, by designating Mr. Lewis as its representative under Fed.R.Civ.P. 30(b)(6), waived the privilege. This court disagrees. Mr. Lewis' testimony does not *automatically* waive the privilege as to all matters relating to the DPH negotiations. *See Commonwealth v. Goldman*, 395 Mass. 495, 480

N.E.2d 1023, 1028–29, *cert. denied*, 474 U.S. 906, 106 S.Ct. 236, 88 L.Ed.2d 237 (1985) (witness' taking stand does not automatically waive privilege). The purported purpose for the disclosures to the DPH was to promote settlement regarding plaintiff's liability under the UFFI repurchase regulations. "Negotiated settlements are to be encouraged." *AMCA International Corporation v. Phipard*, 107 F.R.D. 39, 41 (D.Mass.1985); *see American Optical Corp. v. Medtronic, Inc.*, 56 F.R.D. 426, 431 (D.Mass.1972) (dicta that attorney-client privilege is not waived during settlement negotiations). The disclosures also involved communications between plaintiff, a regulated company, and state regulators, i.e., the DPH. *See United States v. Buco*, No. 90–10252–H, 1991 WL 82459 at *1 (D.Mass.1991) (public policy considerations militate against finding a general waiver when a bank discloses information to federal regulators). Accordingly, contrary to defendant's argument, this court does not find an automatic and general waiver of the subject matter of the DPH negotiations because plaintiff designated Mr. Lewis as its representative under Rule 30(b)(6), Fed. R.Civ.P.

■ Defendant further argues that plaintiff, by filing this lawsuit alleging claims for breach of contract, unfair and deceptive trade practices and unfair and deceptive settlement practices, placed "information protected by the privilege in issue through (an) affirmative act for his own benefit." *Sax v. Sax*, 136 F.R.D. 542, 543 (D.Mass.1991) (citation omitted; assertion of counterclaims constituted waiver); *see generally, AMCA International Corp. v. Phipard*, 107 F.R.D. at 40–43. Defendant's argument has merit. Plaintiff raised the issue that it acted prudently in settling claims with the DPH [7]. In assess-

---

6. This court is not aware of a choice of law clause within the reinsurance contracts at issue.

7. This court does *not* imply that mere relevance to a claim will automatically override or effect the assertion of the attorney-client privilege. However, in plaintiff's complaint, ¶¶ 23 and 24, plaintiff states that:

23. After extensive negotiations with the DPH regarding the amount of Colonial's contribution to the UFFI Trust Fund, on December 14, 1987, Colonial paid $600,000 to the UFFI Trust Fund in settlement of its total contribution to the Fund. The $600,000 contribution was fair and reasonable settlement with the DPH.

ing the extent of plaintiff's waiver, this court adopts the balancing test set forth in *Greater Newburyport Clamshell Alliance v. PSCNH*, 838 F.2d 13, 20 (1st Cir.1988) (court adopted balancing approach in civil rights action under § 1983)[8]. In *Greater Newburyport*, the court weighed "the interests involved, balancing the importance of the privilege asserted against the defending party's need for the information to construct its most effective defense." *Id.* at 20. Accordingly, this court looks askance at plaintiff's use of the privilege in the context of Mr. Lewis' communications with the DPH. The attorney-client privilege was "intended as a shield, not a sword." *Sax v. Sax*, 136 F.R.D. at 543. It should also be noted that plaintiff, as the party asserting the privilege, has the burden of proof. *Federal Trade Comm'n v. Shaffner*, 626 F.2d 32, 37 (7th Cir.1980) (citations omitted).

The parties are, therefore, ORDERED to confer and review all the requested documents in the context of the above discussion of the attorney-client privilege and with the following guidelines:

1. The communication must be between plaintiff and plaintiff's counsel;

2. The relevant time period includes preliminary communications as defined in *Commonwealth v. O'Brien*, 388 N.E.2d at 661; and

3. The extent of plaintiff's waiver by placing the information at issue under the balancing test adopted by *Greater Newburyport*, 838 F.2d at 20.

With regard to Mr. Lewis' testimony at the April 1991 deposition, this court makes the following rulings:

(i). ALLOWED to the extent that deponent will provide a "yes" or "no" answer.

(ii). ALLOWED to the extent that deponent is directed to provide a brief synopsis

of the advice given plaintiff with respect to its obligations under the UFFI Trust Fund.

(iii). ALLOWED to the extent that deponent will provide a "yes" or "no" answer.

(iv). DENIED absent a waiver.

(v). ALLOWED to the extent that deponent will state the earliest time period of when plaintiff began to contemplate coverage litigation with defendant.

## II. *Work Product Doctrine*

 The work product doctrine protects the following: (1) a document or tangible thing, (2) which was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for a party's representative. *Pasteris v. Robillard*, 121 F.R.D. 18, 20 (D.Mass.1988). The doctrine is embodied in the Supreme Court's decision of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and its progeny, now codified in Fed. R.Civ.P. 26(b)(3). An attorney's mental impressions receive special protection. *In Re Murphy*, 560 F.2d 326, 334 & 336 (8th Cir.1977). The pertinent test is:

> whether in light of the nature of the document and the factual situation in the particular case the document can fairly be said to have been prepared or obtained because of the prospect of litigation.

*Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 375 (N.D.Ill.1982) (citations omitted).

The work product doctrine is distinct from and broader than the attorney-client privilege. *United States v. Nobles*, 422 U.S. 225, n. 11, 95 S.Ct. 2160, n. 11, 45 L.Ed.2d 141 (1975). It is not designed to protect a confidential relationship, but rather to promote the adversary system by protecting the product of an attorney's

---

24. Colonial's payment to the UFFI Trust Fund relieved Colonial of all liability under the UFFI repurchase regulations and of all liability for property damage and bodily injury not reasonably discoverable by the homeowner.

Defendant counters with the argument that the $600,000 contribution was voluntary and out-

side the scope of the comprehensive general liability contract.

8. There does not appear to be a Massachusetts case directly on point as to whether a party automatically or partially waives privileged information by litigating its claims in a civil case. *Sax v. Sax*, 136 F.R.D. 542 (D.Mass.1991).

work. *In Re Atlantic Financial Management Securities Litigation,* 121 F.R.D. 141, 145 (D.Mass.1988) (citation omitted); *see Catino v. Travelers Insurance Company, Inc.,* 136 F.R.D. 534, 539 (D.Mass.1991). The doctrine protects documents prepared in previous litigation such as those prepared by plaintiff in anticipation of litigation under the UFFI repurchase regulations. *See In Re Murphy,* 560 F.2d at 335; *see generally,* 4 *Moore's Federal Practice* ¶ 26.64(2).

 The burden is on the party resisting discovery, i.e., plaintiff, to demonstrate that the requested material constitutes work product. *Sham v. Hyannis Heritage House Hotel, Inc.,* 118 F.R.D. 24, 25 (D.Mass.1987) (documents prepared by insurance investigator are unprotected). Even if the material satisfies this test, it is still discoverable upon a showing that the party seeking discovery has a "substantial need" for the materials and cannot obtain the "substantial equivalent" of the materials without "undue hardship." Fed. R.Civ.P. 26(b)(3). *Connelly v. Dun & Bradstreet, Inc.,* 96 F.R.D. 339, 343 (D.Mass.1982). Discovery of work product will therefore be denied where the party seeking discovery can obtain the information by taking the deposition of witnesses. *See generally, Stamatakos v. Hunter Shipping Co.,* 49 F.R.D. 23 (D.C.Pa.1969), *aff'd,* 491 F.2d 751 (3rd Cir.), *cert. denied,* 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974); 8 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2025. In addition, neither inconvenience nor expense constitute sufficient cause to find undue hardship. *Connelly v. Dun & Bradstreet,* 96 F.R.D. 339, 343 (D.Mass.1982).

 Plaintiff does not automatically waive work product protection by disclosing the information to another person. The existence and extent of a waiver depends upon the following three factors:

(1) whether the party claiming the privilege seeks to use it in a way that is inconsistent with the purpose of the privilege; (2) whether the party claiming the privilege had a reasonable basis for believing that the disclosed materials would be kept confidential, and (3) whether waiver of the privilege in these circumstances would trench on any policy elements inherent in the privilege. *In Re Atlantic Financial Management Securities Litigation,* 121 F.R.D. 141, 145 (1st Cir.1988) (citation omitted; protection waived by disclosure to SEC, a potential adversary, without any assurance of confidentiality).

The parties are, therefore, ORDERED to confer and review all the requested documents in the context of the above discussion of the work product doctrine and with the following guidelines:

1. Documents reflecting the mental impressions of counsel receive heightened protection and therefore remain protected;

2. The extent of plaintiff's waiver under the factors cited in *In Re Financial Management Securities Litigation,* 121 F.R.D. at 145;

3. Whether plaintiff voluntarily gave any documents to the DPH. In the event that plaintiff did so, this court finds that plaintiff did not have a "reasonable basis" to believe that the documents, disclosed in the context of litigation under the UFFI repurchase regulations, would be kept confidential. *See In Re Subpoena Duces Tecum,* 738 F.2d 1367, 1372 (D.C.Cir.1984) (party waived privilege by voluntarily giving documents to SEC without assurances of confidentiality); and

4. Whether the documents requested remained solely in the hands of Colonial Gas Company or its predecessor, Cape Cod Gas Company. Documents prepared in anticipation of the litigation under the UFFI repurchase regulations and kept solely in the hands of plaintiff continue to receive work product protection. *See Catino v. Travelers Insurance Company, Inc.,* 136 F.R.D. at 539 (court adopted similar approach in analogous situation).

## CONCLUSION

Based on the above discussion, the parties are ORDERED to confer and file a report of any remaining documents in dispute on or before October 7, 1991. As to

the remaining disputed documents, if any, plaintiff is ORDERED to provide this court with a brief summary of the content of each document. Plaintiff's counsel is further ORDERED to file a brief as instructed in footnote #5 on or before October 31, 1991.