Fremont-Smith, J.
The plaintiffs, Harold W. Stone and Iris Stone (“the Stones”), have sued the defendants, Joseph F. Dalton and Joseph F. Dalton, P.C. (“Dalton”), for legal malpractice in connection with a real estate closing. The Stones assert, among other claims, that Dalton negligently failed to inform them that a parcel of real estate which they sold and on which they took back a purchase-money mortgage, had already been encumbered with a first mortgage by the purchaser. Dalton has denied the allegations, and has pleaded the statute of limitations as his principal defense. Dalton now moves to compel the testimony of the Stones and two of their prior counsel concerning communications between the Stones and said counsel which he alleges will prove that the Stones had learned, more than three years prior to their filing suit, about the prior encumbrance, which bars their claim under the applicable statute of limitations. The Stones have invoked the attorney-client and work product privileges.
FACTS
The Stones owned a parcel of real estate in Lynn (“the property”). In 1985, they decided to sell the property, and engaged Dalton to represent them.[3] The Stones sold the property on July 11, 1986 to Irwin Nebelkoff and Paul Varadian, Trustees of the Van Realty Trust (collectively “NebelkofF), for $725,000. Nebelkoff paid $400,000 in cash and the Stones took back a purchase-money mortgage on the property for the remaining $325,000 (the “second mortgage”).
Nebelkoff raised the $400,000 by granting BNE-Essex a $400,000 first mortgage on the property. Nebelkoff ultimately defaulted on the second mortgage, and the Stones decided to foreclose after unsuccessfully attempting to sell the property. In February 1988, the Stones hired attorney Philip Strome (“Strome”) to handle the foreclosure. After Strome withdrew, in December 1988, for unrelated reasons, the Stones retained attorney Bruce I. Miller, who concluded the foreclosure and sale of the property in June of 1989.
The Stones purchased the property at the foreclosure sale, but to do so, were required to pay off the first mortgage, which they contend they did not learn about until Miller told them of its existence on March 6, 1989. In order to finance the purchase, the Stones borrowed $550,000 from the First Colonial Bank for Savings, and secured the debt with a mortgage on the property and a $95,000 mortgage on their personal home. They subsequently defaulted. The Stones filed suit against Dalton for legal malpractice on March 5, 1992, one day prior to the 3-year statute of limitations for legal malpractice, G.L.c. 260 §4, if measured from the time they claim to have first learned of the encumbrance on March 6, 1989.
DISCUSSION
The gravamen of Dalton’s motion to compel is that discovery of the substance of the communications between the Stones and their attorneys, Strome and Miller, is likely to establish that the Stones learned of the first mortgage not on March 6,1989, as the Stones allege, but in an earlier telephone conversation with Miller concerning the foreclosure. Thus, defendants allege that the complaint was time-barred when it was filed on March 5, 1992.
It is well established that the work product privilege is conditional, and that work product information is discoverable upon a showing of particularized need. See Mass.R.Civ.P. 26(b). It is also well recognized that where information in the possession of counsel is inquired into because it is relevant to an issue in the litigation, there is a particularized need for disclosure of such information. Ward v. Peabody, 380 Mass. 805, 818 (1980). The more doubtful question is whether or not such information is discoverable when it is also subject to the attorney-client privilege.
It is firmly established in Massachusetts that communications between an attorney and client are waived in a subsequent lawsuit by the client against that attorney. Commonwealth v. Woodberry, 26 Mass.App.Ct. 636, 637 (1988), rev. denied, 404 Mass. 1102 (1989). It is not clear, however, whether, in a legal malpractice action by a client against a former attorney, the defendant attorney should be allowed access to privileged communications between the plaintiff and the plaintiffs other former counsel, even if such *213 information is alleged to be directly relevant to the defendant attorney’s principal defense. In Miller v. Superior Court, 111 Cal.App.3d 390, 394-95 (1980), the court answered that question in the negative. The United States District Court for the District of Massachusetts, however, has taken a contrary view. See Sax v. Sax, 136 F.R.D. 542, 543 (1991) (interpreting the Massachusetts Rules of Civil Procedure, so as to predict that the Supreme Judicial Court would rule in favor of disclosure). See also 2 Mallen & Smith, Legal Malpractice §27.28, at 702-03 (3d ed. 1989).
I conclude that fairness militates in favor of requiring the Stones to waive the privilege if they elect to proceed with the lawsuit, and therefore will allow Dalton’s motion to compel.[4]1 recognize, however, that such a ruling carves out a new exception to the attorney-client privilege — an area of law on which the Massachusetts courts have treaded very lightly. See In the Matter of a John Doe Grand Jury Investigation, 408 Mass. 480, 481-82 (1990) (quoting Hunt v. Blackburn, 128 U.S. 464, 470 (1888)). For that reason, I have, by separate order, reserved and reported this decision to the Appeals Court.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ Motion To Compel be ALLOWED.

 Dalton had previously represented the Stones in unrelated matters.

 I do note, however, that if the privilege is ultimately upheld and invoked by the Stones or any of their “closely aligned” witnesses, any unfairness to the defendants could be mitigated, at least in part, by permitting the defendants to comment upon the witness’s invocation of the privilege at the trial, and by permitting the jury to draw a negative inference. See Neitlich v. Peterson, 15 Mass.App.Ct. 622, 628 (1983) (citations omitted).