**Minatronics Corporation v.
Buchanan Ingersoll, P.C.**

C.P. of Allegheny County, no. GD92-7496.

*Steven Haber* and *Albert C. Odermatt*, for plaintiff.
*Sheryl A. Clark, Barry I. Friedman, Michael J. Flinn* and *Carl Cohen*, for defendants Buchanan.
*John R. McGinley Jr.*, for defendant John M. Adams.
*George Raynovich Jr.* represented himself as a defendant.

WETTICK, *J.*, February 14, 1995—Plaintiff's motion to compel the return of inadvertently produced documents is the subject of this opinion and order of court.

Minatronics Corporation's complaint alleges that in March 1986 Minatronics retained the law firm of Buchanan Ingersoll, P.C., to obtain patent protection for a fiber optic cable personal property security system. The supervising attorney assigned to the case set December 31, 1986 as the deadline for filing the application. The attorney whom the law firm assigned to file the patent application never filed an application; however, allegedly he falsely furnished information to Minatronics

which indicated that an application had been filed. In May 1990, Minatronics first learned that the Buchanan law firm had never filed a patent application. On November 30, 1990, Attorney Robert L. Potter of the law firm of Strassburger, McKenna, Gutnick & Potter instituted this lawsuit on behalf of Minatronics. After learning that Buchanan Ingersoll had failed to file an application, Minatronics also retained Attorney Ansel M. Schwartz, a patent attorney, for the purpose of determining whether Minatronics could obtain any patent protections for the current generation of its fiber optic security system and for the purpose of rendering an opinion as to the patent protection that Minatronics would have received if Buchanan Ingersoll had timely filed a patent application.

Voluminous documents which Minatronics produced inadvertently included December 2, 1991, February 3, 1992, and March 13, 1992 letters from Edwin P. Wilson, Minatronics' president, to Mr. Schwartz.[1] These letters are confidential communications between an attorney and a client made in connection with the representation. Consequently, they are protected by the attorney-client privilege unless that privilege has been waived.

Defendants contend that Minatronics waived the privilege by including these letters in the documents which it produced in response to defendants' discovery requests. Defendants also contend that Minatronics waived the privilege by authorizing Mr. Schwartz to turn over other records involving his representation of Minatronics.

---

1. The motion also seeks the return of a two-page handwritten sheet that Mr. Wilson prepared for Mr. Potter which lists various dates, times and payments. The parties' dispute does not center on this document.

## I.

The Pennsylvania appellate courts have never addressed the issue of whether counsel's inadvertent disclosure of documents protected by the attorney-client privilege constitutes a waiver of the privilege. This issue is arising with greater frequency because "the burgeoning of multi-party cases, the availability of xerography and the proliferation of facsimile machines and electronic mail make it technologically ever more likely that through inadvertence, privileged or confidential materials will be produced to opposing counsel." ABA Committee on Ethics and Professional Responsibility, Formal Opinion 368 (1992) *(Inadvertent Disclosure of Confidential Materials)*.

The issue usually arises during the pre-trial stage of the litigation. The privileged documents are inadvertently produced in response to a discovery request. The party which produced the documents learns of the inadvertent production after the documents have already been reviewed by the party that received the documents. The party that inadvertently produced the privileged documents now seeks a court order barring the party that received the documents from (1) introducing the documents into evidence at trial, (2) making any reference to the documents for the remainder of the litigation including trial, and (3) giving or showing the documents to any additional persons.[2]

---

2. The attorney-client privilege does not apply where an attorney's services are being used for purposes of committing a crime. Consequently, courts are not being asked to prohibit the use of inadvertently produced confidential communications where these communications would establish that an attorney is permitting the client to give perjured testimony.

The issue of whether the inadvertent production of privileged documents to an opposing party constitutes a waiver of the attorney-client privilege has been addressed in many reported cases, most of which have been decided within the past 10 years. Most opinions written within the past 10 years refer to three categories or lines of cases.

The first line of cases holds that the production by counsel destroys the privilege. Under this case law, the privilege is lost as soon as counsel makes the privileged documents available to an opposing party; it does not matter whether the documents which counsel produced included documents that counsel did not intend to produce. See *e.g., In re Sealed Case,* 877 F.2d 976 (D.C. Cir. 1989); *Federal Deposit Insurance Corp. v. Singh,* 140 F.R.D. 252 (D. Me. 1992); *Golden Valley Microwave Foods Inc. v. Weaver Popcorn Company Inc.,* 132 F.R.D. 204 (N.D. Ind. 1990); *International Digital Systems Corp. v. Digital Equipment Corp.,* 120 F.R.D. 445 (D. Mass. 1988); *Champion International Corp. v. International Paper Co.,* 486 F. Supp. 1328 (N.D. Ga. 1980).

The second line of cases holds that the privilege is never lost through an inadvertent production of a privileged document. Under this line of cases, the protections of the attorney-client privilege are not waived through a truly inadvertent disclosure by counsel provided that counsel takes prompt action to rectify the situation upon discovery of the inadvertent disclosure. See *e.g., Stratagem Development Corp. v. Heron International N.V.,* 153 F.R.D. 535, 543-44 (S.D. N.Y. 1994); *Shriver v. Baskin-Robbins Ice Cream Company Inc.,* 145 F.R.D. 112 (D. Colo. 1992); *Georgetown Manor Inc. v. Ethan Allen Inc.,* 753 F. Supp. 936 (S.D. Florida 1991); *Helman v. Murry's Steaks Inc.,* 728 F.

Supp. 1099 (D. Del. 1990); *Kansas-Nebraska National Gas Co. Inc. v. Marathon Oil Co.,* 109 F.R.D. 12 (D. Neb. 1984); *Mendenhall v. Barber-Greene Co.,* 531 F. Supp. 951 (N.D. Ill. 1982).

The third line of cases to which the opinions refer holds that the production of a privileged document may but does not necessarily destroy the privilege, depending upon the relevant circumstances surrounding the production. Although the courts refer to the third line of cases which consider the surrounding circumstances as if this was a single line of cases using a third approach for resolving the issue of whether the inadvertent production of documents waives the attorney-client privilege, the opinions which say that they are using this "middle" approach to decide the issue actually take two very different approaches. One approach modifies the absolute rule that any production destroys the privilege by in certain instances restoring the privilege if the privileged documents were produced despite the exercise of reasonable care. The other approach follows the rule that an inadvertent production does not waive the privilege and considers the circumstances surrounding the production of the privileged documents solely for the purpose of determining whether the production was actually inadvertent.

Most of the opinions which state that they are applying the middle approach refer to a five-factor analysis developed in the cases of *Lois Sportswear U.S.A. Inc. v. Levi Strauss & Company,* 104 F.R.D. 103 (S.D. N.Y. 1985), and *Hartford Fire Insurance Co. v. Garvey,* 109 F.R.D. 323 (N.D. Cal. 1985). As stated in *Hartford Fire Insurance:*

"To summarize, the recent case of *Lois Sportswear, supra,* 104 F.R.D. at 105, contains a complete and careful analysis which correctly reflects the majority rule on

inadvertent production.... The court analyzed the problem by examining the following elements: (1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the 'overriding issue of fairness.' " *Id.* at 331-32.

However, this five-factor analysis developed in *Lois Sportswear* and *Hartford Fire Insurance* was applied in a very different fashion in these two cases.

In *Lois Sportswear,* the court rejected the case law which held that the inadvertent disclosure of documents waives the attorney-client privilege. The court adopted the intent standard—the controlling issue was "whether or not the release of the documents was a knowing waiver or simply a mistake, immediately recognized and rectified." *Id.* at 105. The five factors set forth in *Lois Sportswear* were "[t]he elements which go into that determination." *Id.* Through the use of the five-factor analysis, the court concluded that "[u]nder these particular facts, the evidence is barely preponderate that the disclosure of the privileged documents was inadvertent and a mistake, rather than a knowing waiver." *Id.* Consequently, the court permitted the party whose documents had been disclosed to assert the privilege, because it determined that the disclosure was inadvertent.

In *Hartford Fire Insurance,* on the other hand, the court found that the disclosure was inadvertent and applied the five-factor analysis to determine whether the circumstances of the case supported an exception to the rule that any disclosure destroys the privilege.[3]

---

3. In *Hartford Fire Insurance,* counsel inadvertently disclosed documents protected by the work product immunity rather than the

The court said that when it is still possible to preserve most of the protections of the privilege, the controlling issue is "the degree of care used to protect the documents." *Hartford.* 109 F.R.D. at 330. The court rejected the argument that the privilege is not waived through an inadvertent disclosure caused by counsel's negligence. The court ruled that an inadvertent disclosure destroys the privilege unless counsel who inadvertently disclosed the documents shows either that the disclosure was made despite diligent precautions of counsel to protect privileged documents or that the discovery schedule coupled with the scope of discovery resulted in an inadvertent disclosure despite counsel's best efforts under the circumstances.

Thus, while *Lois Sportswear* and *Hartford Fire Insurance* applied the same five factors, the opinions took different approaches to the issue of when the disclosure of privileged documents constitutes a waiver of the privilege. In *Lois Sportswear,* the controlling issue was whether the disclosure was deliberate or inadvertent and the court permitted the party whose documents had been inadvertently disclosed to assert the privilege even though counsel had not taken reasonable precautions to prevent the inadvertent disclosure. In *Hartford Fire Insurance,* the controlling issue was whether there was a reasonable excuse for the inadvertent disclosure and the court did not permit a party whose counsel had inadvertently disclosed the documents to claim the

---

attorney-client privilege. However, courts look to *Hartford Fire Insurance* where the disclosure involves documents protected by the attorney-client privilege because *Hartford Fire Insurance* used the principles of waiver of the attorney-client privilege to determine whether an inadvertent disclosure constitutes a waiver of the work product immunity.

privilege because of counsel's failure to take reasonable precautions.

The cases decided after *Lois Sportswear* and *Hartford Fire Insurance* which consider the circumstances surrounding the disclosure cite *Lois Sportswear* and *Hartford Fire Insurance* interchangeably; some apply the five-factor analysis in a fashion more consistent with *Lois Sportswear* while others apply this analysis in a fashion more consistent with *Hartford Fire Insurance,* usually without recognizing that the five-factor analysis is being used in two very different fashions. Cases that have used the five-factor analysis to support a holding that the privilege was not lost through an inadvertent disclosure caused by counsel's negligence include *Hydraflow Inc. v. Enidine Inc.,* 145 F.R.D. 626 (W.D. N.Y. 1993); *City of Worchester v. HCA Management Company,* 839 F. Supp. 86 (D. Mass. 1993); *Robertson v. Yamaha Motor Corp.,* 143 F.R.D. 194 (S.D. Ill. 1992); and *Kansas City Power & Light Company v. Pittsburgh & Midway Coal Mining Co.,* 133 F.R.D. 171 (D. Kan. 1989). Cases that have used the five-factor analysis to support a holding that the privilege was lost through an inadvertent disclosure because counsel had not taken adequate precautions to avoid inadvertent disclosures of privileged documents include *Federal Deposit Insurance Corp. v. Marine Midland Realty Credit Corp.,* 138 F.R.D. 479 (E.D. Va. 1991); *In re Sause Brothers Ocean Towing,* 144 F.R.D. 111 (D. Or. 1991); *Bud Antle Inc. v. Grow-Tech Inc.,* 131 F.R.D. 179 (N.D. Cal. 1990); and *Parkway Gallery Furniture Inc. v. Kittinger/Pennsylvania House Group Inc.,* 116 F.R.D. 46 (M.D. N.C. 1987).

There really are not three separate approaches to the issue of whether the inadvertent disclosure waives the attorney-client privilege. The case law has developed

two different approaches. Under one approach, the privilege is waived only if counsel intended to produce the privileged documents; an inadvertent disclosure does not waive the privilege. The major variation within this approach deals with the extent to which the courts will scrutinize counsel's assertion that the disclosure was inadvertent. Under the other approach, the privilege is lost when the document is disclosed. The variations within this approach range from an absolute "strict responsibility" approach to an approach which restores the privilege if counsel can show that documents were inadvertently produced despite the exercise of reasonable care.

Because there are only two basic approaches, the controlling issue is whether a ruling that an inadvertent disclosure does not typically waive the attorney-client privilege or whether a ruling that the privilege is always (or usually) waived through an inadvertent disclosure is most consistent with the purposes of the privilege.

The attorney-client privilege rests on the assumption that without the guarantee of confidentiality, counsel will not be able to have the open and honest communications with the client that are necessary for counsel to serve the client's interests. The privilege operates to protect communications that have already been made in order to create a climate in which clients believe that confidential information which they provide to counsel in the future will not be used against them by an opposing party.

Since any privilege operates to prevent information that is relevant to the outcome of the case from being considered by the fact finder, the law provides that any privilege should be construed to protect only disclosures that are necessary for the privilege to achieve its essential purposes. At the same time, however, it

is significant in determining the perimeters of the attorney-client privilege that this privilege applies only to confidential information provided by the client in connection with the representation. In civil proceedings, the privilege does not prevent other parties from obtaining from the client any relevant facts or documents (other than those prepared for counsel) which the client has furnished counsel. It also does not protect any information which counsel obtained from third persons. Thus, any confidential information initially protected by the privilege that becomes known to an opposing party is an unanticipated windfall created by a relationship that was not intended to provide additional sources of information to an opposing party.

The courts which find that an inadvertent disclosure constitutes a waiver of the privilege offer several justifications for this rule. A bell which has already rung cannot be unrung; it is illogical to protect communications on the ground that they involve confidential information when this information has already been provided to the opposing party; and it is inconsistent for a lawyer who has already furnished a client's confidential communications to the opposing party to take the position that he or she cannot properly represent the client unless the client's confidential communications are protected. Also, courts have said that a per se waiver rule furthers the purpose of the privilege of protecting confidential information because lawyers will take greater care to avoid inadvertent disclosure of confidential communications if they know that any disclosure constitutes an automatic waiver of the privilege. Courts have also said that counsel's failure to protect the communication shows that this was not a communication that counsel and the client regarded as highly confidential.

I do not find these arguments to be convincing. In most instances, the most important feature of the privilege is the prohibition against the use of confidential information against the client—rather than the divulgence of this information to an opposing party. Thus, while the bell cannot be unrung and while this confidential information is now known to an opposing party, the most basic protection that the privilege provides— that the confidential communications cannot be used against the client—can still be provided.

As a result of our discovery rules, increased litigation involving greater exchanges of documents, shorter time periods in which to complete discovery and concerns with reducing the costs of litigation, privileged documents are going to be inadvertently produced. Counsel already has sufficient incentives to protect confidential communications. Counsel is mandated to do so by Rule 1.6 of the Rules of Professional Conduct. Furthermore, counsel knows that his or her relationship with a client can be jeopardized by the failure to protect the client's confidences.

By definition, an inadvertent disclosure is a disclosure that neither counsel nor the client intended to make. Ordinarily, the waiver of a privilege or a right requires an intent to do so. Consequently, a court should not refuse to minimize the damage done by the disclosure simply because the disclosure occurred. It should do so only if there is some other reason why the client should entirely lose the full protections of the privilege.

Since the client made the confidential communication with the understanding that it could not be used against the client without the client's consent, the law needs to protect the client's expectations where reasonably possible. This is consistent with fundamental notions of fair play and is essential to encourage clients to

communicate freely and openly with their attorneys. If the assumption underlying the privilege is correct— that clients will not freely and openly communicate with their attorneys unless the law protects these confidential communications—the law must consistently recognize the importance of confidentiality to the holder of the privilege. If clients lose the benefits of the privilege where the law can provide reasonable protections, the law will be sending a mixed message that is inconsistent with fostering the relationship that the privilege is designed to foster.

The underlying issue is whether the attorney-client privilege is an archaic rule of law that should be confined to its narrowest possible limits or whether it is viewed as an essential feature of a relationship of significant social importance. The Pennsylvania appellate courts have consistently sought to preserve the integrity of the privilege because of its significance to a socially important relationship. See *In re Investigating Grand Jury,* 527 Pa. 432, 438-39, 593 A.2d 402, 405 (1991), where the Pennsylvania Supreme Court, citing *Commonwealth v. Maguigan,* 511 Pa. 112, 124, 511 A.2d 1327, 1333 (1986), said that "the roots of the attorney-client privilege are firmly entrenched in our common law, described fittingly as '... the most revered of our common law privileges.' " The purpose of the privilege "is to create an atmosphere that will encourage confidence and dialogue between attorney and client[;] ... [t]he intended beneficiary of this policy is not the individual client so much as the systematic administration of justice which depends on frank and open client-attorney communication." *Id.* at 439-40, 593 A.2d at 406. (citations omitted)

While the Rules of Professional Conduct are not substantive law, the substantive law is frequently influenced

by the Rules. In the ABA Formal Opinion 92-368, *supra,* the committee was asked to render an opinion regarding the obligation of a lawyer who comes into possession of privileged information that was produced through inadvertence. After considering most of the issues that I have addressed in this opinion (whether a rule permitting the receiving attorney to use the confidential information will encourage more careful conduct on the part of other counsel in the future; whether there is anything to protect once the confidential materials have been disclosed to opposing counsel; whether information should be treated as confidential when counsel did not give the communication the respect that a confidential communication deserves), the committee concluded that a lawyer who receives materials which on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear that they were not intended for the receiving attorney, should refrain from examining the materials, notify the sending attorney, and abide by the instructions of the attorney who sent them.

In summary, for the reasons set forth this opinion, I am following the line of cases holding that the disclosure of documents protected by the attorney-client privilege does not waive the privilege where (1) the disclosure was inadvertent, (2) it is still possible to afford the party that produced the documents many of the protections provided by the attorney-client privilege, (3) counsel took reasonable steps after learning of the inadvertent production, and (4) the party receiving the documents will not be prejudiced by a court order prohibiting or restricting that party's use of the documents.

## II.

Defendants contend that Minatronics waived the privilege as to the three documents which it inadvertently produced by producing other portions of Mr. Schwartz's file.

At an October 28, 1991 deposition of Mr. Wilson, president of Minatronics, counsel then representing Minatronics said:

"We subsequently have decided that Minatronics will waive the attorney-client privilege with Mr. Schwartz with respect to his legal work in filing the three patent applications. And so I have no objection to your noticing Mr. Schwartz's deposition requiring Mr. Schwartz to bring his file in or asking Mr. Schwartz to give you a front to back copy of his file." Tr. at 203.

Thereafter, counsel then representing Minatronics furnished defendants with documents involving Mr. Schwartz's legal work in filing the patent applications.

The attorney-client privilege may be waived in three ways. There is the voluntary waiver in which the client or counsel agreed to make confidential information available to an opposing party. Under the case law, this waiver extends to the information which counsel or the client agreed to make available and other information which they would no longer have intended to remain confidential in light of the voluntary disclosure.

There is a waiver by prior disclosure that does not depend upon the intentions of the party raising the privilege. This waiver is based on a rule of law that I will discuss in greater detail which may automatically extend the voluntary waiver to other communications covering the same subject.

The third waiver is a waiver by assertion. Where a party raises a claim or defense that has made the protected communications relevant to the case, the party has waived the privilege through its own affirmative conduct. A waiver by assertion arises most frequently where a party raises reliance upon advice of counsel to support a claim or a defense. See *Bowne of New York City Inc. v. AmBase Corporation,* 150 F.R.D. 465, 487-89 (S.D. N.Y. 1993), and cases cited therein.

Initially, Minatronics argues that there has never been a waiver of the privilege as to any documents because Minatronics' former counsel was not authorized by the client to waive the privilege with respect to those documents which counsel agreed to make available to defendants. This argument is without merit because counsel, as an agent for Minatronics, may waive the privilege on behalf of Minatronics whenever he or she does so to further the client's interests as determined by counsel. See *In re Von Bulow,* 828 F.2d 94, 100-101 (2d Cir. 1987); *Stratagem Development Corp. v. Heron International N.V.,* 153 F.R.D. at 543; *Hydraflow Inc. v. Enidine Inc.,* 145 F.R.D. at 636-37; and *Parkway Gallery Furniture Inc. v. Kittinger/Pennsylvania House Group Inc.,* 116 F.R.D. at 50.

Furthermore, the statement of counsel that Minatronics would waive the attorney-client privilege was made at a deposition of Minatronics' president. If Minatronics' president did not agree with his attorney's decision to allow defendants to obtain Mr. Schwartz's legal work in filing the three patent applications, he had a duty to say so at that time. See *In re Von Bulow,* 828 F.2d at 101.

Next Minatronics contends that the waiver was intended to cover only the contents of Mr. Schwartz's file as of the date of the deposition (October 28, 1991). Minatronics' counsel never specifically agreed to pro-

duce confidential communications from Minatronics' president to Mr. Schwartz made after the October 28, 1991 deposition, and a willingness to produce the contents of the file as of October 28, 1991 does not indicate a willingness to produce subsequent confidential communications between Minatronics' president to Mr. Schwartz. I agree. Consequently, there is no voluntary waiver of the privilege as to the December 2, 1991, February 3, 1992, and March 13, 1992 documents that were inadvertently produced.[4]

Also, Minatronics has not made these communications a part of its case. Consequently, the sole issue is whether Minatronics' voluntary waiver of the attorney-client privilege as to Mr. Schwartz's legal work in filing the three patent applications constitutes a waiver by prior disclosure as a matter of law.[5]

I have not found any Pennsylvania appellate opinions that have addressed this issue. The case law of other jurisdictions is divided.

In the present case, defendants do not claim that Minatronics selectively waived the attorney-client privilege to obtain a tactical advantage or that defendants are less able to defend the case because of the selective

---

4. Pennsylvania case law places the burden of proof on the party which asserts that the privilege has been waived. *In re Investigating Grand Jury,* 527 Pa. at 440, 593 A.2d at 406; *Hopewell v. Adebimpe,* 129 Pitts. Leg. J. 146, 148, 18 D.&C.3d 659, 663-64 (1981), and cases cited therein.

5. This case does not involve the issue of whether the voluntary disclosure of confidential information in one case constitutes a waiver of the attorney-client privilege at least with respect to the same information in other cases. See *Westinghouse Electric Co. v. Republic of Philippines,* 951 F.2d 1414 (3d Cir. 1991); *Bowne of New York City Inc. v. AmBase Corp.,* 150 F.R.D. at 478-81, and cases cited therein.

waiver of the privilege. Consequently, defendants cannot prevail unless I conclude that any waiver of the attorney-client privilege operates to waive the privilege as to every confidential communication between counsel and the client, whenever made, involving the same subject matter.

There is substantial case law supporting defendants' position that as a matter of law, any voluntary waiver of the privilege as to some confidential communications waives the privilege as to all confidential communications regarding the same subject matter. See *Bowne of New York City Inc. v. AmBase Corp.,*150 F.R.D. at 484-86, and cases cited therein, where the court said:

"It bears emphasis that these cases do not require the discovering party to demonstrate prejudice, such as, for example, proof that the privilege holder has disclosed only favorable materials. They also do not require the discovering party to demonstrate that the privilege holder is putting the privileged communications in issue in the litigation. It appears sufficient, for a waiver as to subjects discussed in the disclosed conversations, that the privilege holder has voluntarily revealed only some of the communications on the subject and has withheld others." *Id.* at 485. (citations omitted) (footnotes omitted)

The rationale for this case law is that the privilege is not intended to be used as a tactic by which the party entitled to invoke it may control to its advantage the timing and circumstances of the release of information. The party's only options are to fully withhold or fully disclose. A rule that requires a showing of prejudice places at an unfair advantage the party opposing the exercise of the privilege because it is unlikely that this party can establish prejudice without access to the withheld communications.

Some cases which follow the rule that any voluntary disclosure of confidential information protected by the attorney-client privilege waives the privilege as to all such communications involving the subject matter have rejected the argument that this rule should be confined to communications made prior to the voluntary waiver. See *e.g., McCormick-Morgan Inc. v. Teledyne Industries,* 765 F. Supp. 611 (N.D. Cal. 1991); *Smith v. Alyeska Pipeline Service Co.,* 538 F. Supp. 977 (D. Del. 1982), *aff'd,* 758 F.2d 668 (Fed. Cir. 1984). Other cases hold that the waiver by prior disclosure extends only to communications made before the waiver of the attorney-client privilege. See *e.g., Nye v. Sage Products Inc.,* 98 F.R.D. 452, 454 (N.D. Ill. 1982), where the court said:

"In terms of time, it is not clear just how extensive a waiver Sage is asserting. The court is impressed by the reasoning of *Duplan [Corp. v. Deering Milliken Inc.,* 397 F. Supp. 1146 (D. S.C. 1975)], refusing to find a prospective waiver. 'To establish a waiver of all later generated privileged documents would effectively disallow the parties from forever thereafter discussing the same subject matter in any other privileged context.' 397 F. Supp. at 1191. There may be situations in which a waiver properly is given some prospective effect, but the court sees no reason for holding that plaintiffs waived privilege as to communications occurring after the act of waiver."

There is also substantial case law supporting Minatronics' position that the disclosure of confidential attorney-client communications does not constitute a waiver of any other confidential communications between a client and counsel where there is no apparent prejudice to the party seeking further disclosure. The rationale for this result is that the rule of law extending

the waiver to confidential communications which were not disclosed is based on considerations of fairness—a party should not be permitted to use the privilege as a sword and as a shield. Thus, where it is clear that the limited disclosure is not being used in this fashion, there is no justification for applying a subject matter waiver. See *In re Von Bulow,* 828 F.2d at 101-04; *Stratagem Development Corp. v. Heron International N.V.,* 153 F.R.D. at 544-45, and cases cited therein.

Courts have supported the rule that a selective disclosure does not waive the privilege as to other confidential communications unless the selective disclosure creates a risk of unfairness on the ground that selective disclosures are frequently in the public interest and should be encouraged. Cases can be resolved through settlements achieved as a result of limited disclosures. (In the present case, for example, the disclosures were made in an effort to resolve Minatronics' claims at an early stage of the litigation.) A party may be willing to respond to a discovery request seeking documents that may be privileged by producing the documents if their production does not constitute a waiver of the privilege as to additional documents that may be protected by the attorney-client privilege. See *AMCA International Corp. v. Phipard,* 107 F.R.D. 39 (D. Mass. 1985).

I find to be persuasive the argument that a waiver should not automatically reach confidential communications involving the same subject matter made after the waiver because such a rule would place the client in the position of being unable to communicate freely and openly with his or her counsel for the duration of the representation. I also find to be persuasive the argument that limited disclosures can serve a worthwhile purpose and, consequently, the law should not discour-

age parties from voluntarily disclosing confidential communications (unless made for the purpose of achieving a tactical advantage) by adopting a rule of law that causes voluntary disclosures to operate as a waiver of other confidential communications involving the same subject matter.

For these reasons, I enter the following order of court:

### ORDER

On February 14, 1995, it is hereby ordered that defendants shall not (1) introduce into evidence at trial the documents which were inadvertently produced, (2) make any reference to these documents for the remainder of the litigation, or (3) furnish the documents to any additional persons.