Joseph MURRAY, Plaintiff,

v.

GEMPLUS INTERNATIONAL, S.A., et al., Defendants.

Civil Action No. 02–CV–9023.

United States District Court, E.D. Pennsylvania.

Sept. 16, 2003.

Alan B. Epstein, David B. Picker, Paul R. Rosen, Spector, Gadon & Rosen, PC, Dorian S. Mazurkevich, Mari Shaw, Richard P. Limburg, Thomas A. Leonard, Obermayer, Rebmann, Maxwell & Hippel, LLP, Philadelphia, PA, for Plaintiff.

James H. Steigerwald, Julie S. Lu, Matthew A. Taylor, Tracy L. Schwab, Kelly D. Eckel, Patrick Loftus, Duane Morris, LLP, Jennifer McGlinn, Duane Morris, Anthony J. Dimarino, III, John P. McShea, McShea, Tecce, PC, David J. Wolfsohn, Mark A. Aronchick, Shanon Levin Lehman, Hangley, Aronchick, Segal & Pudlin, Robert R. Reeder, Cozen O'Connor, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

SCHILLER, District Judge.

Plaintiff Joseph Murray brings suit against Defendants Gemplus Corporation, Gemplus International, S.A. (collectively "Gemplus") and Hesta Corporation ("Hesta") for, inter alia, misappropriation of trade secrets and fraud. Plaintiff claims that Gemplus, his former employer, has attempted to patent several of Plaintiff's inventions without naming Plaintiff as an inventor. Gemplus argues that the inventions are its own intellectual property. Presently before the Court is Plaintiff's Motion to Compel [1] the production of evidence as to which Gemplus asserts attorney-client privilege.

### I. BACKGROUND

Plaintiff's Amended Complaint asserts claims against Gemplus and various attorneys, alleging that these Defendants engaged in a common scheme to misappropriate Plaintiff's intellectual property. Although Plaintiff has settled his claim with regard to some of the lawyers whose conduct is at issue in this case, a large portion of Plaintiff's allegations continue to relate to the actions of—and communications between—Gemplus and its attorneys. Consequently, Gemplus has asserted the attorney-client privilege throughout the discovery process as to many documents sought by Plaintiff.

On April 30, 2003, in response to a document request made by Plaintiff, Gemplus produced approximately 415 pages of documents, including at least six internal communications among in-house counsel for Gemplus.[2] These documents relate to the

---

1. The Court notes that neither the "motion" at issue in this ruling nor the response thereto was filed with the Clerk of Court. Nonetheless, the Court construes Plaintiff's letters of August 11–12, 2003, as a Motion to Compel and Defendant's letter of August 26, 2003, as a brief in opposition to that Motion.

2. These documents are Bates-numbered GP15775, GP15777, GP15783, GP15789, GP15795, and GP15797.

negotiations between Gemplus and Plaintiff's previous employer, Hesta, regarding an intellectual-property assignment that Gemplus sought to obtain from Hesta for the inventions that are the subject of this lawsuit. These documents show that Gemplus's in-house counsel desired the assignment so that Gemplus would be "'squeaky' clean" with regard to the ownership of this intellectual property. (Discovery Doc. GP15777.) On May 30, 2003, without objection from Gemplus, Plaintiff introduced the documents and marked them as exhibits in the deposition of one of Gemplus's in-house attorneys.[3] On August 11, 2003, Plaintiff raised the issue of waiver of privilege in a letter to the Court. On August 19, 2003, Gemplus, for the first time, requested that the privileged documents be returned.

Plaintiff asserts that these documents were intentionally disclosed by Gemplus in an attempt to cast Gemplus in a positive light as being concerned with properly obtaining intellectual property rights to its products. Plaintiff argues that Gemplus has waived its privilege via this intentional disclosure not only with regard to the disclosed documents but also as to all other communications relating to Gemplus's efforts to obtain an intellectual property assignment from Hesta. Gemplus responds that the production of these documents was entirely accidental—a side-effect of outside counsel's pregnancy-related medical leave—and as such, the production cannot constitute a waiver of attorney-client privilege. Accordingly, Gemplus requests that Plaintiff return to Gemplus all copies of privileged documents. In the alternative, Gemplus argues that if a waiver did occur, it is limited to documents created from January to May of 2000.

In order to resolve this motion, the Court must determine: (a) Whether Gemplus has waived its attorney-client privilege with regard to the documents it produced; (b) whether Gemplus has waived its attorney-client privilege with regard to other communications relating to the same subject-matter as the produced documents, and, if so, (c) the

scope of materials subject to this waiver. As discussed below, the Court finds that Gemplus waived its attorney-client privilege with regard to all communications between January 2000 and November 2000 discussing the Gemplus–Hesta negotiations.

## II. DISCUSSION

### A. Waiver of the Attorney–Client Privilege Regarding the Produced Documents

As a preliminary matter, the Court notes that jurisdiction in this case is based upon diversity of the parties, 42 U.S.C. § 1332, and as such Pennsylvania law governs the assertion and waiver of privilege. *See* Fed. R.Evid. 501 ("[I]n civil actions and proceedings with respect to a . . . claim or defense as to which State law supplies the rule of decision, the privilege . . . shall be determined in accordance with State law."); *ICI Am. v. John Wanamaker of Philadelphia*, No. Civ. 88–1346, 1989 WL 38647 (E.D.Pa. Apr.18, 1989), *aff'd*, 888 F.2d 1380 (3d Cir.1989) (applying Pennsylvania law to privilege dispute).

Neither the Court nor the parties have uncovered any Pennsylvania appellate court decisions governing waiver of the attorney-client privilege by disclosure of privileged documents. *See ICI* at *2 ("The court has found no Pennsylvania state court cases interpreting [privilege law] in the context of an inadvertent disclosure by an attorney during pre-trial discovery procedures."); *Minatronics Corp. v. Buchanan Ingersoll, P.C.*, 23 Pa. D. & C.4th 1, 1995 WL 520686 (Pa.Ct.Com. Pl.1995) ("I have not found any Pennsylvania appellate opinions that have addressed this issue. The case law of other jurisdictions is divided."). The leading Pennsylvania case is *Minatronics*, in which the court thoroughly examined the various approaches to this issue taken by both Pennsylvania and out-of-state courts. Also instructive is *ICI*, in which this Court (Bechtle, J.) applied Pennsylvania law to determine whether inadvertent disclosure of privileged documents con-

---

3. Gemplus argues that it asserted its attorney-client privilege at Mr. Cohen's deposition. The deposition transcript clearly shows, however, that Gemplus asserted its privilege only with regard to certain *questions* calling for privileged information, not with regard to the privileged *documents* at issue in this Motion. (Cohen Dep. 191–200.)

stituted a waiver of privilege as to those documents and/or their subject matter.

In *Minatronics,* the Court of Common Pleas identified four lines of cases addressing the waiver of attorney-client privilege through disclosure of privileged documents. *Minatronics,* 23 Pa. D. & C.4th at 3–5. The first line of cases holds that disclosure, whether intentional or inadvertent, always constitutes a waiver vis-a-vis the disclosed documents. *Id.* at 3 (citing, inter alia, *In re Sealed Case,* 877 F.2d 976 (D.C.Cir.1989)). The second line of cases holds that disclosure constitutes a waiver only if the disclosure was intentional or counsel failed to take "prompt action" upon realization of the disclosure.[4] *Id.* (citing district court cases from six states). The third line of cases takes a "middle approach," applying a five-factor balancing test to determine whether the privilege has been waived. *Id.* at 5 (citing district court cases from eight states); *see also* 8 Wright, Miller & Marcus, *Fed. Practice & Procedure* § 2016 (2d ed.1994). This test weighs: (1) The precautions taken by the disclosing party to prevent accidental disclosure; (2) the time taken to rectify the disclosure; (3) the scope of discovery; (4) the extent of the disclosure; and (5) equitable considerations. *ICI,* 1989 WL 38647, at *3; *Minatronics,* 23 Pa. D. & C.4th at 4; 8 Wright, Miller & Marcus, *supra,* at nn. 20–25. The *Minatronics* court noted that courts use the five-factor test in two different manners: Some courts use the test to determine whether the disclosure was, in fact, inadvertent, while others assume inadvertence and use the test to determine if the privilege has been waived thereby. *Minatronics,* 23 Pa. D. & C.4th at 4.

In summary, therefore, *Minatronics* identified three general holdings regarding waiver of privilege by disclosure: (1) Automatic waiver; (2) waiver by intentional disclosure only, with intent sometimes judged by the five-factor test; and (3) waiver of inadvertently produced documents if such waiver is deemed appropriate under the five-factor test.

■ The court in *ICI* appears to have followed the last of these approaches, using the five-factor test to determine that the disclosing party in that case had waived its privilege as to the disclosed documents but not as to any other privileged communications. *ICI* at *3–4. In the instant case, however, the Court finds the approach of judging inadvertence under the five-factor test to be most fitting. The *ICI* approach is flawed, for it presents the disclosing party with "no-win" situation: If the party took great care during the document review process, any disclosed privileged document must have been produced intentionally, and therefore privilege is waived regarding the produced document; but, if the party failed to put extensive document review in place, then the party did not safeguard the privilege, which is therefore waived regarding the produced documents. This analysis would thereby result in near-certain waiver of privilege as to produced documents. In addition, the Court rejects the automatic waiver approach because that approach fails to account for situations in which a truly inadvertent disclosure by a party's counsel would jeopardize that party's legal rights. *See Minatronics* at 7. In other words, it is not always appropriate for a litigant to bear the severe cost of his or her lawyer's mere negligence. Only the approach in which a lawyer's disclosure is imputed to his or her client *if* it is intentional strikes the proper balance between protecting client communications and preventing litigants from using selective disclosures of privileged material to gain advantages in litigation.

---

4. One secondary source has described this approach as follows:

First, the court determines whether the disclosure was actually accidental.... Second, if the disclosure is deemed accidental, the court examines the precautions the attorney took to assert and protect the privilege.... Finally, the court considers the steps the attorney took to reassert and protect the privilege upon discov-

ery of the inadvertent disclosure.... The cases indicate that immediate remedial action is necessary to avoid an implied waiver of the privilege.

James M. Grippando, Attorney–Client Privilege: Implied Waiver Through Inadvertent Disclosure of Documents, 39 U. Miami L.Rev. 511, 514–15 (1985) (internal citations omitted).

■ Applying the five-factor test to judge inadvertence, this Court finds that Gemplus's disclosure of the privileged documents was not inadvertent.[5] The Court finds persuasive the fact that Gemplus became aware of its disclosures no later than May 30, 2003, yet took absolutely no action to recover its documents until August 19, 2003—eleven weeks after Gemplus was informed of the disclosure and one week after Plaintiff filed the instant Motion to Compel. Gemplus's willful decision not to seek recovery of the documents for such an extended period of time convinces the Court that Gemplus *wanted* Plaintiff to see the privileged documents. *See, e.g., Edwards v. Whitaker,* 868 F.Supp. 226, 229 (M.D.Tenn.1994) (finding waiver where disclosing party did not object to use of disclosed documents in deposition); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn, Inc.,* 132 F.R.D. 204, 209 (N.D.Ind. 1990) (same); *Baxter Travenol Labs., Inc. v. Abbott Labs.,* 117 F.R.D. 119, 121 (N.D.Ill. 1987) (finding waiver where disclosing party failed to object to use of privileged documents); Grippando, *supra,* at 514 ("An attorney's delay in reasserting the privilege and seeking the document's return can be fatal. The cases indicate that immediate remedial action is necessary to avoid an implied waiver of the privilege."). In addition, the Court is not persuaded by Gemplus's argument that its document-review system was generally excellent and that these documents represent an isolated, accidental breakdown in that system. This argument might have been convincing if the produced documents had damaged—or even been neutral to—Gemplus's case. On the contrary, however, Gemplus seems to have produced only the documents that are most beneficial to its defense, which is a highly suspicious circumstance at best. *See* Grippando, *supra,* at 514 ("[A] court would not deem any deliberate attempt to gain an advantage through full or partial disclosure to be 'accidental.' "). In light of all the evidence, therefore, the Court finds that Gemplus intentionally disclosed the privileged documents to Plaintiff, thereby waiving Gemplus's attorney-client privilege with respect to those documents. Accordingly, Gemplus's request for return of the privileged documents is denied.

**B. Waiver of the Attorney–Client Privilege Regarding the Subject–Matter of the Produced Documents**

*1. Whether Gemplus's Disclosure Constitutes a Subject–Matter Waiver*

According to *Minatronics* and other authorities, "there is substantial case law supporting [the] position that as a matter of law, any voluntary waiver of the confidential communications waives the privilege as to all confidential communications regarding the same subject matter." *Minatronics,* 23 Pa. D. & C.4th at 10 (citing *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 484–86 (S.D.N.Y.1993)); *see also Edwards,* 868 F.Supp. at 229 ("With regard to the issue of the extent of [the] waiver, it is well-established that 'voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.' " (quoting *Weil v. Inv./Indicators, Research & Mmgt.,* 647 F.2d 18, 24 (9th Cir. 1981))); John T. Hundley, *Waiver of Evidentiary Privilege by Inadvertent Disclosure—State Law,* 51 A.L.R.5th 603, § 9, 1998 WL 2606 (1997) (collecting cases finding subject-matter waiver). However, "[t]here is also substantial case law supporting [the] position that the disclosure of confidential attorney-client communications does not constitute a waiver of any other confidential communications between a client and counsel where there is no apparent prejudice to the party seeking further disclosure." *Minatronics,* 23 Pa. D. & C.4th at 11 (citing *In re von Bulow,* 828 F.2d 94, 100–01 (2d Cir.1987)); *see also* Hundley, *supra,* § 10 (citing *ICI* in support of limited-waiver argument).

■ Research does not disclose any Pennsylvania cases discussing waiver of the attorney-client privilege due to a party's intentional disclosure of privileged materials. Thus, this Court turns to the persuasive au-

---

**5.** Unlike federal common law, "Pennsylvania places the burden of proof on the party which asserts that the privilege has been waived." *Mi-* *natronics,* 23 Pa. D. & C.4th at 9 n. 4 (citing *In re Investigating Grand Jury,* 527 Pa. 432, 440, 593 A.2d 402 (Pa.1991)).

thorities and secondary sources cited above. The Court finds most persuasive the argument that when one party intentionally discloses privileged material with the aim, in whole or in part, of furthering that party's case, the party waives its attorney-client privilege with respect to the subject-matter of the disclosed communications. *See In re Leslie Fay Cos., Inc. Sec. Litig.*, 161 F.R.D. 274, 282 (S.D.N.Y.1995) ("Based principally on notions of fairness, courts have imposed such a 'subject matter waiver' most often when the privilege-holder has attempted to use the privilege as both 'a sword' and 'a shield' or when the party attacking the privilege will be prejudiced at trial."); *Edwards,* 868 F.Supp. at 229; Hundley, *supra,* § 9, and cases cited therein. As many courts have noted, the attorney-client privilege is a shield used to protect communications, not a sword wielded to gain an advantage in litigation. *Leslie Fay,* 161 F.R.D. at 282; *Valenti v. Allstate Ins. Co.,* 243 F.Supp.2d 200, 220 (M.D.Pa.2003) ("Counsel is reminded that privilege is a shield not a sword."). Where one party attempts to utilize the privilege as an offensive weapon, selectively disclosing communications in order to help its case, that party should be deemed to have waived the protection otherwise afforded it by the privilege it misused.

In light of this conclusion, and given that the Court has held that Gemplus's disclosure was intentional, *see supra* Part II.A, the Court finds that Gemplus waived its attorney-client privilege with regard to the scope of the otherwise-privileged documents it disclosed to Plaintiff on April 30, 2003.

### 2. Scope of the Subject–Matter Waiver

■ Having determined that Gemplus waived its attorney-client privilege regarding the subject-matter of the privileged documents it disclosed, determining the precise scope of that waiver is a fairly simple matter. Gemplus disclosed its documents in order to put in a positive light the motivation that went into the Gemplus–Hesta negotiations, namely Gemplus's desire to be "squeaky clean." By doing so, Gemplus waived its privilege with regard to these negotiations. Accordingly, Plaintiff must be granted the right to inspect other documents in order to determine whether and how Gemplus intended to become "squeaky clean." *See Edwards,* 868 F.Supp. at 229 ("Therefore, this Court finds that Defendants' disclosure of the letters in question constitutes a waiver of the attorney/client privilege as to all communications on the same topics as those addressed in the letters."); *Golden Valley,* 132 F.R.D. at 207–08 (N.D.Ind.1990) ("Voluntary disclosure ... waives the privilege as to remaining documents of that subject matter.").

Gemplus argues that the waiver should cover only a portion of the negotiating period because of a break in the communications during that time. The Court is unconvinced by this argument, as the existence of a temporal break in communications has no bearing on the subject-matter of those communications. Gemplus has waived its privilege with regard to all documents regarding the Gemplus–Hesta negotiations during the period of those negotiations. Thus, all such communications from the period of January 2000 through November 2000 shall be produced by Gemplus, and Gemplus shall not assert its attorney-client privilege with regard to the formation of the Hesta agreement.

### C. Additional Arguments in Plaintiff's Motion to Compel

In his Motion to Compel, Plaintiff also argues that: (a) The client-fraud exception to the attorney-client privilege applies to Gemplus's communications with its counsel; (b) certain documents produced by Gemplus were improperly redacted; and (c) Gemplus improperly asserted its attorney-client privilege at the deposition of Jason Cohen.

First, the Court finds that Plaintiff has failed to make an evidentiary showing sufficient to warrant invocation of the crime-fraud exception. *See United States v. Zolin,* 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (committing decision of whether to undertake in camera review to discretion of district court); *see also In re Grand Jury Subpoena,* 223 F.3d 213, 217 (3d Cir.2000) (holding that party opposing privilege must make prima facie case of crime-fraud exception). Second, the Court denies as moot Plaintiff's claims of improper redaction, as

these claims were ruled upon orally during the hearing of September 3, 2003. Finally, the Court finds that Gemplus's assertion of the attorney-client privilege during the deposition of Jason Cohen, although arguably proper at the time, may no longer be appropriate in light of the Court's ruling today regarding Gemplus's waiver of privilege. Thus, the Court denies Plaintiff's motion regarding Gemplus's deposition objections with the expectation that Gemplus will not prevent Mr. Cohen from testifying regarding the Gemplus–Hesta agreement at his upcoming deposition.

## III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiff's Motion to Compel the Production of Evidence. An appropriate Order follows.

### ORDER

**AND NOW,** this day of **September, 2003,** upon consideration of Plaintiff's Motion to Compel Production of Evidence, the responses thereto, and the oral arguments of September 3, 2003, it is hereby **ORDERED** that Plaintiff's motion is **GRANTED in part** and **DENIED in part,** as follows:

1. Plaintiff's motion to compel the production of evidence on the basis of Defendant's waiver of attorney-client privilege is **GRANTED.** Defendant shall produce all documents dating from January through November of 2000 regarding the contract negotiations between Defendant Gemplus and Defendant Hesta and as to which Defendant Gemplus has heretofore asserted its attorney-client privilege. Defendant Gemplus shall not assert its attorney-client privilege with regard to any communications occurring during this time frame and discussing this subject-matter.

2. Plaintiff's motion to compel the production of evidence on the basis of the crime-fraud exception is **DENIED.**

3. Plaintiff's motion to compel the production of evidence on the basis of improper redaction is **DENIED** as moot.

4. Plaintiff's motion to compel the deposition testimony of Jason Cohen is **DENIED** without prejudice to Plaintiff's re-filing the motion if Gemplus asserts its attorney-client privilege at Mr. Cohen's future deposition.

